IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


MADHUSUDHANA KONDRAGUNTA and
LAVANYA ATHURI,

        Plaintiffs,

v.

ACE DORAN HAULING & RIGGING CO.
and DANNY TERRY,

        Defendants.

CIVIL ACTION NO.

1:11-cv-01094-JEC

## ORDER & OPINION

This case is before the Court on defendants' Motion for Summary Judgment ("DMSJ") [85], defendants' Motion to Strike Plaintiffs' Expert Opinions [110], and defendants' Motion for Oral Argument [116]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's Motion for Summary Judgment [85] should be **DENIED without prejudice**, defendants' Motion to Strike [110] should be **DENIED**, and defendants' Motion for Oral Argument [116] should be **DENIED.**

## BACKGROUND

On April 7, 2009, defendant Danny Terry and plaintiff Kondragunta were involved in an automobile collision. (DMSJ [85] at 3.) According to the defendant, the parties were stopped at a

traffic light when the light turned green and traffic began to move. (Terry Dep. at 62, attached to DMSJ [86] as Ex. C.)  Defendant Terry contends that, after the traffic started to move, plaintiff suddenly stopped.  Unable to safely stop his tractor-trailer in time, Terry's truck struck plaintiff's car.  (*Id.*)  Although defendant did not receive a citation, the officer responding to the collision did issue Terry a warning for following too closely.  (*Id.* at 65.)

Plaintiff cannot recall exactly what occurred during the accident, but says that he was stopped at a light when he was struck from behind.  (Kondragunta Dep. [33] at 18.)  The collision "shook" his body and left him feeling "dizzy."  (*Id.* at 18 & 35.)  After the accident, the plaintiff did not return to work and began to experience pain later that evening.  (*Id.* at 32-33.)

Plaintiffs Kondragunta and his wife, Lavanya Athuri, filed suit for the former's injuries and the latter's loss of consortium[1] in Georgia state court; defendants then removed the action.  (Not. of Removal [1].)  At the request of the parties, the Court extended the discovery deadline three times until discovery finally ended on April 2, 2012.  (Jan. 19, 2012 Minute Order granting Joint Mot. for

---

[1]  Although there are two plaintiffs in this case, plaintiff Athuri's claim is derivative of her husband's claim.  As almost all of the discussion in this Order focuses on issues related to plaintiff Kondragunta's claim, the Court will use the singular "plaintiff" from hereon out.

2

Extension of Time [60].)  Shortly thereafter, defendants moved for summary judgment on the issue of causation.  That is, defendants contend that plaintiff has offered no evidence to indicate that the rear-ending of his car caused the cervical spine and jaw injuries that he now claims.  (DMSJ [85].)

In support of this argument, defendants attached three affidavits by medical professionals.  The first two affidavits were from defendants' designated medical experts.  Both expert doctors had reviewed Kondragunta's medical history and concluded that, to a reasonable degree of medical certainty, the April 7, 2009 accident did not cause the injuries that plaintiff was claiming.  (*See id.* at Exs. D & E.)  The third affidavit was from one of Kondragunta's "treating physicians," Dr. D. Hal Silcox, whom plaintiff had consulted regarding neck pain following the accident.  In this affidavit, Dr. Silcox declared that it was his opinion that plaintiff's cervical spine disc protrusion was not the result of an acute injury brought on by the accident, but was instead the result of "chronic, degenerative changes that pre-existed the April 7, 2009 motor vehicle accident."  (Aff. of Silcox [86] at ¶¶ 7-8.)

In response to, and opposing, defendants' summary judgment motion, plaintiff submitted the affidavits of three other doctors who had treated him, as well as a revised affidavit from Dr. Silcox. (Pls.' Br. in Opp'n to DMSJ [105] at Exs. A-E.)  Plaintiff's experts

all declare that, to a reasonable degree of medical certainty, the April 7, 2009 collision caused plaintiff's jaw and neck pain and resulted in the need for surgery. (Aff. of Gary F. Bouloux [93] at ¶ 6; Aff. of Shahrock C. Bagheri [94] at ¶ 6; and Aff. of Lee A. Kelley [95] at ¶ 4.) Although none of the plaintiff's experts denied that plaintiff had a disc condition that pre-dated the accident, it is their belief that plaintiff was asymptomatic before the collision, and became symptomatic only after the collision. (*Id.*)

Dr. Silcox also revised the prior affidavit that defendants had submitted in support of their motion for summary judgment. Dr. Silcox now states that when he signed the first affidavit, presented to him by defense counsel on April 26, 2012, he did not have available to him all the information regarding plaintiff's subsequent treatment and surgery with Dr. Lee Kelley. (May 2012 Aff. of Silcox [96] at ¶ 4.) Thus, Dr. Silcox claims that his April 2012 Affidavit was based on incomplete information and his second affidavit, submitted with plaintiffs' response to the defendants' summary judgment motion, was intended to replace that first affidavit. (*Id.*) Dr. Silcox amended his opinion to state: "Assuming Mr. Kondragunta did not have treatment for neck pain in the two years leading up to the April 7, 2009 collision, it is my opinion to a reasonable degree of medical certainty that the collision caused the neck pain for which he sought treatment from me. In other words, it is my opinion

4

that the collision caused Mr. Kondragunta to go from having asymptomatic degenerative disc disease to having symptoms of neck pain." (*Id.* at ¶ 5.)

Clearly, these affidavits submitted by plaintiff have created a disputed factual question as to the causal relation between the car accident and plaintiff's claimed injuries. Defendants contend, however, that plaintiff's affidavits should be ignored. That is, concurrently with their Reply, defendants filed a Motion to Strike [110] these affidavits, arguing that these experts were not properly disclosed pursuant to FED.R.CIV.P. 26(a)(2). (Defs.' Rep. [111] at 6; Defs.' Mot. to Strike [110] at 1.) Defendants note correctly that, without the affidavits from his physicians, plaintiff will have failed to identify "any competent, timely disclosed medical testimony" that illustrates a causal relation between plaintiff's injuries and the collision with the defendant. (Defs.' Rep. To Pls.' Resp. to DMSJ ("Defs.' Rep.") [111] at 5.) In response, plaintiff argues that the disclosure of his experts was subject to, and met the requirements of, FED.R.CIV.P. 26(a)(2)(C).

### DISCUSSION

Because the plaintiff relies on the affidavits of his treating physicians in opposing defendants' summary judgment motion and because defendants argue that these affidavits should not be considered in deciding that motion, the Court must first determine

5

whether the affidavits of plaintiff's experts should be struck for failure to comply with FED.R.CIV.P. 26. Only after this determination, can the Court then properly rule on defendants' motion for summary judgment [85].

## I.   MOTION TO STRIKE

Defendants move to strike the affidavits of Dr. Gary F. Bouloux [93], Dr. Shahrokh C. Bagheri [94], Dr. Lee A. Kelley [95], and the second affidavit of Dr. D. Hal Silcox [96] (hereafter, referred to collectively as plaintiff's "Treating Physicians") on the ground that they improperly contain expert opinions beyond the scope of treatment and were not timely disclosed pursuant to FED.R.CIV.P. 26(a)(2). (Defs.' Mot. to Strike [110] at 1.) Defendants argue that, because the plaintiff failed to timely file reports for these doctors, as required by FED.R.CIV.P. 26(a)(2)(B), these Treating Physicians may only testify regarding their care and treatment of plaintiff Kondragunta and may not offer an expert opinion on causation. (Defs.' Mot. to Strike [110] at 9.) Plaintiff responds that FED.R.CIV.P. 26(a)(2)(B) is inapplicable in this case and that the plaintiff's disclosures regarding his experts meets the requirements of FED.R.CIV.P. 26(a)(2)(C), which plaintiff deems to be the applicable sub-section.

6

### A.   Parties' Contentions

As noted, defendants argue that any expert testimony of plaintiff's treating physicians is subject to FED.R.CIV.P. 26(a)(2)(B) and that, because plaintiff did not comply with this provision, the testimony of these doctors must be struck.  Plaintiff agrees that he did not comply with the above provision, but he argues that the latter is not applicable to his treating physicians' expert testimony.  Instead, he contends that FED.R.CIV.P. 26(a)(2)(C) is the applicable provision, and he argues that his disclosures complied with this latter provision.  Defendants counter that even if Rule 26(a)(2)(C) is the operative provision, plaintiff also failed to comply with it.

As amended in 2010, FED.R.CIV.P. 26(a)(2) provides, in pertinent part, as follows:

B.   *Disclosure of Expert Testimony*.

(A)   *In General*.  In addition to the disclosures required by Rule 26(a)(1), a party <u>must disclose</u> to the other parties <u>the identity of any witness it may use</u> at trial to present evidence <u>under Federal Rule of Evidence 702</u>, <u>703</u>, <u>or 705</u>.

(B)   *Witnesses Who Must Provide a Written Report*.  Unless otherwise stipulated or ordered by the court, this <u>disclosure must be accompanied by a written report</u>-prepared and signed by the witness-**<u>if the witness is one retained or specially employed to provide expert testimony</u>** in the case....  The report must contain:

(i)   a complete statement of all opinions the witness will express and the basis and reasons for them;

7

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, <u>if the witness is not required to provide a written report</u>, this <u>disclosure must state</u>:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

FED.R.CIV.P. 26(a)(2)(emphasis added).

In other words, plaintiff concedes that, pursuant to Rule 26(a)(2)(A), his treating physicians are experts whom he intends to use to present evidence under FED.R.EVID. 702,703, or 705. Therefore, plaintiff admits that he was required to disclose the identity of these witnesses to defendants, which he did. He argues, however, that he was not required to provide the extensive report traditionally required for expert witnesses, as set out in Rule

8

26(a)(2)(**B**)(hereinafter referred to as a "Rule 26 report" or "Subsection B report"), because these treating physicians were not retained or specially employed to provide expert testimony, which he asserts is the trigger for the duty to provide such a report under the rule.

Thus, plaintiff argues that he was not required to provide a Rule 26 report, but instead, pursuant to Rule 26(a)(2)(**C**), he only had to disclose to defendants the subject matter of the treating physician's anticipated expert testimony and a summary of the facts and opinions on which that individual was expected to testify.

## B.   Disclosures Provided by Plaintiffs

In May 2011, plaintiff filed his initial disclosures, stating that he had "not yet decided on experts for use at trial." (Pls.' Initial Disclosures [6] at ¶ 4.)   On May 9, 2011, defendants sent their first interrogatories to the plaintiff. (Defs' Mot. to Strike [110] at 3.)   Interrogatory 19 called for the plaintiff to "identify each expert of every type expected to testify at trial," as well as to set out the subject matter and facts underlying the expert's opinion and a summary of the grounds for each opinion. (*Id.*)   In June 2011, plaintiff responded to Interrogatory 19, noting that he had not made a decision as to whether he would retain any experts, but also directing defendants to review plaintiff's initial

9

disclosures regarding experts.   (Pls.' Resp. To Defs.' First
Interrog. [99].)[2]

On December 19, 2011, just prior to the beginning of the phase
of discovery in which the parties intended to depose expert
witnesses, plaintiff provided supplemental responses to both his
initial disclosures and to defendants' Interrogatory 19.   (Pls.'
First Supp. Resp. [48] at ¶ 4 and Defs.' Mot. to Strike [110] at Ex.
B.)   In pertinent part,[3] the supplemental response to the initial
disclosure reads:

> Pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil
> Procedure, Plaintiffs hereby also identify the following
> treating physicians who may testify [] regarding their
> treatment of Plaintiff Madhusudhana Kondragunta ("Plaintiff
> Kondragunta"), evaluation of Plaintiff Kondragunta, the
> injuries caused by the collision at issue in this case,
> Plaintiff Kondragunta's jaw surgery (Dr. Shahrokh C.
> Bagheri and Dr. Gary Bouloux), Plaintiff Kondragunta's back
> and/or neck injuries (Dr. Lee Kelley, Dr. D. Hal Silcox,
> and Dr. Donald Langenbeck), their medical records relating
> to Plaintiff Kondragunta's care and medical history,
> Plaintiff Kondragunta's prior treatment and future
> prognosis and treatment and the need for Plaintiff

---

[2]   This response to defendants' first interrogatories was
actually provided to defendants in June 2011, but was filed with the
Court in May 2012: hence, the large gap, for docketing purposes,
between the document number for plaintiff's initial disclosures and
that for plaintiff's response to Interrogatory 19.

[3]   The plaintiff also designated a trucking expert "pursuant to
Rule 26(a)(2)(A)" and attached this expert's report satisfying the
requirements of Rule 26(a)(2)(B).   (Pls.' First Supp. Resp. [48] at
¶ 4 & Ex. B.)   That expert is not challenged by defendants.

Kondragunta to have additional surgeries, and any other opinions contained in their medical records or deposition testimony (all of the below names are known to Defendants and Defendants have their addresses):

1. Lee A. Kelley, M.D.;

2. D. Hal Silcox, III, M.D.;

3. Donald Langenbeck, M.D.;

4. Shahrokh C. Bagheri, D.M.D., M.D., F.A.C.S.; and

5. Gary F. Bouloux, D.D.S., M.D., M.D.Sc.

*Id.* (emphasis added).

The plaintiff's supplemental response to Interrogatory 19 did not include the introductory phrase, "Pursuant to Rule 26(a)(2)(C)," but it otherwise used the same language to identify these potential experts. On that same day, plaintiff also filed a document entitled "Plaintiffs' Expert Designations," which designated plaintiff's retained trucking expert, Corey Cox, pursuant to Rules 26(a)(2)(A), and provided a written report "satisfying the provisions of Rule 26(a)(2)(B)." (Pls.' Expert Designation [49] at 1-2.) The document further disclosed the identities of the treating physicians "[p]ursuant to Rule 26(a)(2)(C)." The description of the substance of the doctors' anticipated testimony was identical to the language used in plaintiff's disclosures described above and made this same date. (*Id.* at 2-3.)

11

On January 19, 2012, one month after the plaintiff had submitted the above-described supplemental responses, the parties submitted a Joint Motion to Allow Depositions of the Parties' Expert Witnesses and Treaters To Be Taken Within Sixty Days After Close of Discovery [60]. As the discovery deadline in the case was then set to expire on January 31, 2011, this motion extended the time to conduct depositions to April 2, 2012.

Around the same time, defendants submitted a motion for a qualified protective order permitting them to conduct *ex parte* interviews with the plaintiff's Treating Physicians as plaintiff had refused to consent to or sign a HIPAA authorization. (Defs.' Mot. for QPO [55].) On March 7, 2012, Magistrate Judge Vineyard granted defendants' motion and entered the protective order. (Vineyard Order [77].) This order granted defendants the right to have *ex parte* communications with all of the plaintiff's Treating Physicians as to the issues the plaintiff had placed at issue in the litigation,[4] including the "etiology" of plaintiff's "thoracic and/or neck pain" and "temporomandibular joint disorder." (QPO [78] at 2-3.) The word "etiology" means causation,[5] so defendants were necessarily intending

---

[4]    The Treating Physicians' participation in the *ex parte* communications was not mandated, however, by Judge Vineyard. (QPO [78] at 3.)

[5]    "Etiology" means "the study of causes or origins" or "the cause of a disorder or disease as determined by medical diagnosis."

to talk to these physicians about any opinions they might have concerning the causal relation between the accident and the claimed injuries.

The undersigned does not know whether defendants actually conducted *ex parte* interviews with all of the plaintiffs' Treating Physicians, but it is apparent that they did so with at least Dr. Silcox, as defendants submitted an affidavit from the doctor in their summary judgment motion.  (DMSJ [85] at Ex. F.)  It also appears from the record that none of the plaintiff's Treating Physicians, including Dr. Silcox, were ever formally deposed by either party.

### C.   Whether Plaintiff's Disclosures Complied with Rule 26 (a)(2)(C)

To recap, defendants argue that plaintiff cannot use testimony from his treating physicians because he intends to seek expert opinions from those witnesses regarding causation, meaning that he was required to first provide a Rule 26 report, pursuant to Rule 26(a)(2)(B), as a prerequisite to use of the witness.  Plaintiff argues that, while some courts may have so interpreted Rule 26 prior to its amendment in 2010, this matter is now governed by amended Rule 26(a)(2)(C), which indicates that treating physicians are not subject to the more onerous requirements of Rule 26(a)(2)(B) unless they were first retained for litigation by the party whom they treated.  As

_____

Webster's II New Riverside University Dictionary 445 (1986).

AO 72A
(Rev.8/82)

plaintiff's treating physicians were not retained for this litigation, plaintiff argues that they were subject only to Rule 26(a)(2)(C).

Thus, plaintiff concedes, and the Court likewise concludes, that, at the least, plaintiff was required to comply with Rule 26(a)(2)(C) ("hereinafter "Subsection C") as to plaintiff's treating physicians. Defendants note that, even if plaintiff was only subject to Subsection C, their disclosures did not comply with the requirements of that rule. The Court agrees.

As noted, Subsection C requires disclosure (1) of the subject matter about which the witness will testify as an expert (that is, under Rule 702, 703, or 705), and (2) a summary of the facts and opinions to which the witness is expected to testify. Rule 26(a)(2)(C)(i)-(ii). Plaintiff did disclose the names of the treating physicians whose affidavits he filed in opposition to the defendants' motion for summary judgment. Plaintiff further complied with the requirement that he disclose the subject matter about which these expert witnesses would be testifying. That is, he indicated that these physicians would be testifying regarding their treatment of the plaintiff, their evaluation of plaintiff, the injuries caused by the collision, plaintiff's medical records, plaintiff's prior treatment and future prognosis and treatment, and any other opinions contained in their medical records. Plaintiff also broke down, by the

14

particular physician, the doctors who would be testifying about the jaw surgery, as opposed to the doctors who would be testifying about the back and neck injuries and surgery.

Plaintiff did not, however, comply with Rule 26(a)(2)(C)(ii), which requires a summary of the facts and the opinions on which the witness is expected to testify.[6] The reader of plaintiff's disclosure has no idea what opinion the doctor will offer or on what facts the doctor will base that opinion. Further, the fact that plaintiff provided all his medical records to the defendants does not mean that plaintiff has fulfilled the "summary of the facts and opinions" prong of Rule 26(a)(2)(C).[7] Allowing medical records to be submitted "in lieu of a summary would invite a party to dump voluminous medical

---

[6] *See, e.g. Faile v. Dillard's Inc.*, No. 5:11-cv-41-RS-CJK, 2011 WL 7641239, at *1 (N.D. Fla. Nov. 4, 2011)(Smoak, J.)(simply identifying treating physicians and stating they "may be an expert to the extent an opinion is rendered as to causation and damages" did not satisfy 26(a)(2)(C) disclosure requirements); *The Provident Bank v. Mattson*, No. 8:10-cv-1338-T-33TBM, 2011 WL 1576582, at *2 (M.D. Fla. Apr. 26, 2011)(McCoun, J.)(concluding motion to strike was unwarranted, but requiring party seeking to admit experts to provide a summary of the facts and opinions to which each witnesses is expected to offer to be "consistent with the dictates of Rule 26(a)(2)(C); *Schultz v. Ability Ins. Co.*, No. C11-1020, 2012 WL 5285777, at *5 (N.D. Iowa Oct. 25, 2012)(Scoles, C. Mag. J.) (rejecting plaintiff's argument that simply identifying treating physicians was enough to satisfy Rule 26(a)(2)(C)'s requirements).

[7] *See, e.g., Shultz,* 2012 WL 5285777, at *5; *Carrillo v. B & J Andrews Enters., LLC*, No. 2:11-cv-01450-RCJ-CWH, 2013 WL 394207, at *7 (D. Nev. Jan. 19, 2013)(Hoffman, Mag. J.); *Lopez v. Keeshan*, No. 4:11CV3013, 2012 WL 2343415, at *4 (D. Neb. June 20, 2012)(Zwart, Mag. J.).

AO 72A
(Rev.8/82)

records on the opposing party, contrary to the rule's attempt to extract a 'summary.'" *Ballinger v. Casey's Gen. Store, Inc.*, No. 1:10-cv-1439-JMS-TAB, 2012 WL 1099823, at *4 (S.D. Ind. Mar. 29, 2012)(Baker, Mag. J.).

Thus, plaintiff, who was required to comply, at the least, with Rule 26(a)(2)(C) did not fully comply,[8] and the compliance that plaintiff provided was too abbreviated to provide the defendants with any insights as to the pivotal parts of these doctors' testimony: their opinions regarding causation.  Yet, while plaintiff failed to comply with the rule, exclusion of the witness is not automatic. Instead, the Court must proceed to determine whether exclusion is justified under Rule 37(c)(1).

### D.   Whether Plaintiff's Treating Physicians Should Be Excluded Based on Plaintiff's Non-Compliance With Rule 26(a)(2)(C)

As a result of plaintiff's noncompliance with Subsection C (as well as with Subsection B, which is discussed *infra*), defendants have asked the Court to strike the affidavits of plaintiff's Treating Physicians.  As noted, if the Court strikes these affidavits,

---

[8]  Plaintiff has only cited to one case where a court found that the contested disclosures met the Rule 26(a)(2)(C) standard. *Ashkenazi v. S. Broward Hosp. Dist.*, No. 11-61403-CV, 2012 WL 760824, at *1 (S.D. Fla. Mar. 8, 2012).  Although Judge Cohn found the disclosures in his case to be sufficient, his order does not discuss what the disclosures actually were.  Without that information, the Court cannot compare those disclosures with plaintiffs' disclosures in the present case.

16

defendants will win summary judgment by default, as plaintiff will have offered no evidence to controvert defendants' experts' testimony that the automobile accident did not cause the physical injuries that plaintiff now claims.

      1.   <u>Standard</u>

A court may exclude affidavits or testimony from a witness when "a party fails to provide information or identify a witness as required by Rule 26(a)." FED.R.CIV.P. 37(c)(1).  However, a court does not have to impose those sanctions if it believes the failure was "substantially justified or is harmless."  *Id.*

In the past, other judges in this district have applied a five-factor test when determining whether an insufficient disclosure is harmless. *Bruce v. Classic Carrier, Inc.*, No. 1:11-cv-01472-JEC-JCF, Oct. 31, 2012 Order of Mag. J. Fuller, Dkt. No. [50] at 7-10 (citing *Cambridge Univ. Press v. Becker*, 1:08-cv-1425-ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)(Evans, J.)).  These factors are:

    (1)  the surprise to the party against whom the evidence would be offered;

    (2)  the ability of that party to cure the surprise;

    (3)  the extent to which allowing the evidence would disrupt the trial;

    (4)  the importance of the evidence; and

    (5)  the nondisclosing party's explanation for its failure to disclose the evidence.

*Cambridge Univ. Press,* 2010 WL 6067575, at *3.

2.   <u>Application Of Test To Facts Of This Case</u>

Applying this test here, the question is whether the defendants were surprised by the affidavits of plaintiff's treating physicians in which the latter stated their belief, to a medical certainty, (1) that  the collision between plaintiff's car and defendants' tractor-trailer caused the injuries that plaintiff suffered in that (2) while plaintiff had degenerative disc disease prior to the accident, he had experienced no symptoms from this condition (and presumably would have remained asymptomatic, but for the automobile accident).

As noted, the plaintiff had not disclosed any Subsection B experts, but had identified his Treating Physicians, "pursuant to Rule 26(a)(2)(C)." *Supra* at 10-11.  Further, plaintiff had indicated that these Treating Physicians would be testifying regarding not only their treatment of plaintiff, but also "the injuries <u>caused</u> by the collision at issue in this case." *Id*. at 10 (emphasis added).

So can defendants justifiably claim surprise that these Treating Physicians would be providing testimony as to causation?  The answer is "No," because the plaintiff had so informed defendants in the

AO 72A
(Rev.8/82)

above disclosure.[9]  Yet, while defendants cannot claim surprise,[10] they can justifiably complain about the adequacy of the above disclosure.  As noted earlier, plaintiff's disclosure came nowhere near to complying with the Rule 26(a)(2)(C)(ii) requirement that he provide "a summary of the facts and opinions to which the witness is expected to testify."  Here, plaintiff gave only the most conclusory hint of the anticipated testimony of these doctors.

The problem for defendants, though, is that they had the ability to complain, and thereby cure this surprise,[11] prior to the expiration of expert discovery, by advising plaintiff that his disclosures did

---

[9]  In fact, defendants note that they believed plaintiff would "attempt to circumvent the obligation to disclose expert opinions by utilizing FED.R.CIV.P. 26(a)(2)(C) as a safe haven to obtain additional expert opinions not previously disclosed" *before* the plaintiffs ever filed these affidavits.  (DMSJ [85] at 9, n.7.)

[10]  Admittedly, the defendants were probably surprised by Dr. Silcox's about-face in his second affidavit, in which he contradicted the statement in his first affidavit to the effect that the accident had not caused plaintiff's injuries.  Indeed, in the second affidavit, provided along with plaintiff's response to defendant's motion for summary judgment, Dr. Silcox joins in with the other treating physicians in expressing his belief that the accident had caused plaintiff's medical problems.

Plaintiff, though, was probably just as surprised when he read the first affidavit of Dr. Silcox, opining that the accident had not caused his injuries.  As plaintiff promptly "notified" the defendants of Dr. Silcox's revised opinion--through his filing of a response to the motion for summary judgment that had referenced the first opinion--defendants' surprise does not implicate any protections afforded by Rule 37.

[11]  The ability to cure the surprise is the second factor of the test.

19

not comply with the rule and by requesting more specific disclosures. Had plaintiff resisted, defendants could have sought the intervention of the Court.  Defendants did not do so, but instead laid in wait, hoping that plaintiff's non-compliance would doom his ability to offer any expert testimony.  Indeed, the fourth factor of the test looks to the importance of the evidence sought to be excluded.  Here, if plaintiff's experts are excluded, his case will not make it past summary judgment.  Thus, clearly the evidence is quite important.

Finally,[12] looking to the fifth factor--the nondisclosing party's explanation for its failure to disclose the evidence--this factor does weigh against the plaintiff.  As discussed below, one could readily assume uncertainty on plaintiff's part as to whether he needed to submit a Subsection B report for his Treating Physicians, but he knew he had to submit, at the least, a Subsection C report and should have been aware that his disclosure did not comply with subsection (ii) of Rule 26(a)(2)(C).

Yet, just as defendants took a gamble--by failing to depose plaintiff's only witnesses on causation in the hopes that plaintiff's arguable compliance with Subsection B and/or C would result in exclusion of these witnesses--plaintiff also took a risk in presenting a Subsection C disclosure that did not fully comply with

---

[12]  The third prong of the test--the extent to which allowing the evidence would disrupt the trial--is not a factor here.

Subsection C.[13]   In a similar situation, the Eleventh Circuit has noted:

> We do not commend either party on its efforts to resolve this dispute. [The proponent of the expert] would do well to make sure that, in the future, its Rule 26 disclosures comport with both the spirt and the letter of the rule. Nonetheless, [the opposing party] allowed this impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention, *never* moving for an order requiring any more detailed response under Rule 26.

*Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002).

Ultimately, the inquiry focuses on the question whether the plaintiff's non-compliant disclosure created a harm that cannot be cured. Most courts that have dealt with this same question in similar situations have answered "No," and instead permitted the non-compliant party another opportunity to provide a compliant report, after which the moving party is then permitted to depose the witness. *See, e.g., Faile v. Dillard's Inc.,* No. 5:11-cv-41-RS-CJK, 2011 WL 7641239, at *2 (N.D. Fla. Nov. 4, 2011)(Smoak, J.)(finding the lack of disclosures to be harmless); *Lopez v. Keeshan,* No. 4:11CV3013, 2012 WL 2343415, at *4-5 (D. Neb. June 20, 2012)(Zwart, Mag. J.)(deciding not to strike testimony of treating physicians even though party was technically not in compliance with Rule

---

[13]   And, to the extent that it turns out that plaintiff actually should have provided a Subsection B report from these doctors, plaintiff's approach will have been even riskier. *See* discussion *infra.*

26(a)(2)(C));   *The Provident Bank v. Mattson*, No. 8:10-cv-1338-T-33TBM, 2011 WL 1576582, at *2 (M.D. Fla. Apr. 26, 2011)(McCoun, Mag. J.)(holding that "while somewhat brief, [the disputed disclosures] nevertheless provided [the other party] with the general substance about which these witnesses were expected to testify and an order striking these witnesses is entirely unwarranted.")

That is what the Court will do here.   Assuming that the plaintiff will not need to file a Subsection B report, as discussed below, but instead will only need to file a compliant Subsection C report, the plaintiff shall redraft its existing disclosure, expanding on, and   providing more specific information, in its summary of the facts and opinions to which each Treating Physician is expected to testify.[14]   Thereafter, the Court will reopen discovery for the defendants to depose these witnesses.

For the foregoing reasons, the defendants Motion to Strike [110] is **DENIED**.

_____

[14]   That is, why exactly does each physician think that the accident caused the problems experienced by the plaintiff, as opposed to his preexisting condition?  If the basis for that opinion is, for example, that an MRI made shortly prior to the accident showed far less deterioration than an MRI after the accident, that ground should be offered.

22

II.  <u>**WHETHER PLAINTIFF'S AMENDED DISCLOSURES FOR THE TREATING PHYSICIANS MUST COMPLY WITH THE MORE ONEROUS PROVISIONS OF RULE 26(a)(2)(B), AS OPPOSED TO Rule 26(a)(2)(C)**</u>

As set out above, plaintiff did not comply with the provision of Rule 26 that even he admits he should have complied with:  Subsection C.   Defendants argue, however, that, because these Treating Physicians will be testifying, not just as to their treatment of plaintiff, but also as to causation, these physicians have become experts subject to the full panoply of requirements set out in Subsection B.

As plaintiff has been directed to amend his disclosures concerning his Treating Physicians, some guidance must be given so that the plaintiff can determine to which subsection he must adhere in preparing his amended disclosures.  This is an uncertain issue for the Court to decide, however:  partly, because it does not know exactly what testimony the doctors will be providing and partly, because it is not altogether clear how the recent 2010 Amendment to Rule 26, giving rise to Subsection C, should be interpreted.

**A.   2010 Amendment to Rule 26(a)(2)**

As noted, the 2010 amendment to Rule 26(a) allows a litigant to provide more abbreviated information concerning certain types of expert witnesses covered by Rule 26(a)(2)(a)[15] than has been, and

---

[15]   Again, Rule 26(a)(2)(a) calls for the disclosure of the identity of any witness who may be used to present evidence under

AO 72A
(Rev.8/82)

remains, required for a full-blown expert witness.  As to the legal interpretation to be given to the amended rule, the Advisory Committee Notes indicate that Subdivision (a)(2)(C), whose heading is "Witnesses Who Do Not Provide a Written Report," was adopted in 2010 to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." (Advisory Committee's Notes on 2010 Amendments on FED.R.CIV.P. 26 (hereinafter "Advisory Notes").

    The new subdivision "mandate[s] summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B)." *Id.*  Some "frequent examples" of witnesses who are not required to file a Rule 26(a)(2)(B) report, but who may nevertheless offer expert testimony, are "physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." *Id.* Finally, the Committee notes that "an (a)(2)(B) report is required only from an expert described in (a)(2)(B)." *Id.*

    As to the text of the rule, the headings of the two subsections at issue distinguish between "Witnesses Who Must Provide a Written Report" (Rule 26(a)(2)(B)) and "Witnesses Who Do Not Provide a Written Report" (Rule 26(a)(2)(C)).  In providing guidance as to how to decide in which pigeonhole a particular expert belongs, the Rule

---

Federal Rule of Evidence 702, 703, or 705.

24

offers only one criterion: whether the witness has been retained or specially employed to provide the expert testimony.[16]

From that language, plaintiff argues, not unreasonably, that his Treating Physicians cannot be deemed Subsection B witnesses as they were not retained or specially employed to provide the expert testimony they will be giving. While the ease of applying that distinction makes it appealing, the limited caselaw on this point since the 2010 amendments does not appear to follow this approach.

**B.   Caselaw Interpreting Phrase "Retained or Specially Employed" Witness**

As noted, there has been little caselaw since promulgation of the 2010 amendment on the matter at issue. Contrary to plaintiff's position that a treating physician who is not retained will never be subject to the requirement of Rule 26(a)(2)(B), these few court decisions, none of which are Eleventh Circuit decisions, adhere to traditional tests for determining when a Treating Physician is considered to be a full-blown expert and when he is considered to be more akin to a percipient witness with professional expertise, like

---

[16]   (B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, <u>this disclosure must be accompanied by a written report</u>--prepared and signed by the witness-- <u>if the witness is one retained or specially employed to provide expert testimony</u> in the case....

(emphasis added).

the experts envisioned in the new Subsection C.  The fact that the physician was not formally retained as an expert is not deemed dispositive by these courts.

In *In Re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5199597 (S.D. Fla. Oct. 22, 2012), the presiding judge, Judge Altonaga, has summarized some of those rulings in her examination of this question.  *In Re Denture* holds that the "label of 'treating physician' is irrelevant; instead, the determination turns on the substance of the physician's testimony."  *Id.,* at *4, citing to *Singletary v. Stops, Inc.,* No. 6:09-cv-1763-Orl-19KRS, 2010 WL 3517039, at *6 (M.D. Fla. Sept. 7, 2010).  When a treating physician testifies regarding opinions that have been formed and based on observation made during the course of treatment, he need not produce a Subsection B report.  *Id.*, citing to *Jensen v. Carnival Corp.,* No. 10-24383, 2011 U.S. Dist. LEXIS 108727, at *3 (S.D. Fla. Sept. 25, 2011).  "By contrast, treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required."  *Id.*, citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).  Finally, a "treating physician <u>may be subject to Rule 26(a)(2)(C) as to portions of his or her testimony</u> and <u>may be deemed a retained or specially employed expert who is subject to Rule 26(a)(2)(B) as to</u>

26

other portions." *Id.*, citing to *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997)(emphasis added).

Applying these standards to the case before it, the *In re Denture* court concluded that, because the witnesses were to testify as to causation, their "title 'treating physicians' does not carry the day," and they were required to provide full Subsection B reports. *Id.,* at *5.

In the *Goodman* decision cited in *In Re Denture*, the Ninth Circuit had addressed the iteration of Rule 26(a)(2)(b) in effect prior to the 2010 amendment.[17] *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). That iteration nonetheless contained the same "retained or specially employed" language that remains in the amended rule, and on which plaintiff now relies.[18] The Ninth Circuit addressed the question whether a treating

---

[17]   The Ninth Circuit issued its opinion after the 2010 amendment, albeit the period of discovery apparently occurred prior to the amendment.

[18]   The version of Rule 26(a)(2)(B) in effect prior to the 2010 amendment is identical to the version in effect since the amendment, with one exception: the pre-2010 iteration contained the heading, "*Written Report,*" whereas the amended rule now contains the heading "*Witnesses Who Must Provide a Written Report.*" *Compare* 28 U.S.C. App.R.Civ.P. 26(a)(2)(B)(Supp. III 2009) with Fed.R.Civ.P. 26(a)(2)(B). Both iterations require an expert witness to submit a written report only if that expert was "retained or specially employed."

As noted, prior to 2010, there was no counterpart to the newly-added text in Rule 26(2)(2)(C), which now, for the first time, requires substantive disclosure, albeit not a written report,

physician, who was to testify as to whether a particular accident was the cause of the plaintiff's injuries, was required to file a written report, as required by Rule 26(a)(2)(B). The plaintiff had argued that because the physician had not been retained as an expert, there was no such obligation.

Noting that this was a case of first impression for the circuit, *id.* at 824, the Ninth Circuit "join[ed] those circuits that have addressed the issue" to "hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* at 826. However, "when a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony must [provide a written Rule 26(2)(a)(b) report]." *Id.* at 819-20 (emphasis added). In the case before it, the court concluded that the treating physicians had been asked to render expert testimony beyond the scope of the treatment rendered. Accordingly, they were required to submit a written Subsection B report. *Id.* at 826.

As to those other circuits that the Ninth Circuit joined, the Seventh Circuit held in *Meyers v. Nat'l R.R. Passenger Corp.*

---

concerning the opinions of experts who were not "retained or specially employed for the litigation."

28

(*Amtrak*), 619 F.3d 729 (7th Cir. 2010) that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Id*. at 734-35. The court noted the possibility that "some device" might be used to avoid this requirement, such as sending the client to a particular physician for both treatment and a causation opinion. In such cases, the court noted, the physician might arguably be "retained or specially employed," but even without that classification, the district court "would retain power [under the Rule]" to direct that a written report be prepared "when needed to provide fair disclosure to the opposing party." *Id*. at 735, n.3.

Also cited by the *Goodman* court, although not entirely endorsed by it, the Eighth Circuit in *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010) held that a treating physician must disclose a written report whenever he testifies about causation of a medical condition, as opposed to merely the existence of the condition. Finally, the Sixth Circuit in *Fielden v. CSX Transp., Inc.* 482 F.3d 866, 871 (6th Cir. 2007) held that a report is not required when a treating physician testifies "within a permissive core on issues pertaining to treatment," based on what he learned through actual

29

treatment, but a written report is required unless evidence shows that the physician formed his opinion during the course of treatment.

**C.    Application Of Above Principle To This Case**

Contrary to the approach taken by the above courts, plaintiff has argued that the amended rule and the explanatory Advisory Committee Notes trump any prior precedent to the contrary.  The Advisory comment on which plaintiff apparently relies is its reference to "physicians who do not regularly provide expert testimony" as being an example of an expert who does not have to provide a Rule 26(a)(2)(B) written report.  Indeed, the Eleventh Circuit has held that "although not binding, the interpretations in the Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1131 (11th Cir. 2005).

Consistent with that directive, the Court considers the Advisory Notes to constitute persuasive authority in interpreting the rule. Nevertheless, the Court concludes that prior caselaw concerning the standard for when a hybrid expert, such as a treating physician, should be deemed a full-blow Subsection B expert has not been abrogated by the newly-added text in Rule 26(a)(2)(C). This is so because the trigger for Subsection B status--the phrase "retained or specially employed"--is found in both the amended and unamended rule, and caselaw that had interpreted this phrase, even before the

30

amendment, is more persuasive to the Court than is the Advisory Committee Notes' listing of an example. While the amended rule may have created a new type of disclosure for experts who were not required to file a written report, it did not alter the criterion for identifying those experts who do have to submit a report: that is, experts who have been "retained or specially employed". Further, caselaw interpreting the above phrase has held that a treating physician can, in fact, be considered a retained or specially employed witness, under certain circumstances.

Accordingly, if a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required, *Jensen v. Carnival Corp.*, No. 10-24383, 2011 U.S. Dist. LEXIS 108727, at *3 (S.D. Fla. Sept. 25, 2011), albeit the Subsection C report discussed above will be required. If, however, the physician's opinion was based on facts gathered outside the course of treatment, *id.*, or if the physician's testimony will involve the use of hypotheticals, then a full subsection B report will be required. *Bruce v. Classic Carrier, Inc.*, 1:11-cv-01472-JEC-JCF, Order dated Oct. 31, 2012, Dkt. No. [50] at 11-12. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)("the ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses...."

Given the abbreviated, conclusory statements offered by

31

plaintiff's treating physicians, the Court cannot forecast how this standard will apply to them in terms of the need for a written Subsection B report, versus a Subsection C disclosure. Plaintiff shall make an assessment of the type of report he needs to file for each treating physician and shall disclose that report by **April 22, 2013.** The deposition discovery schedule for these treating physician witnesses shall begin on **May 20, 2013 and end on July 8, 2013.**[19]

III. <u>**MOTION FOR SUMMARY JUDGMENT**</u>

The defendants' motion for summary judgment was predicated on their expectation that the Court will strike the plaintiff's treating physicians' affidavits, meaning that the plaintiff will have then failed to identify "any competent, timely disclosed medical testimony." (Defs.' Rep. [111] at 5.) Because the Court will give plaintiff another opportunity to submit appropriate disclosures or reports concerning his experts and will give defendants an opportunity to depose those affiants, it is too early to know whether plaintiff will be able to create an issue of fact concerning causation. Thus, defendant's summary judgment motion [85] is

---

[19]   Recognizing that these treating physicians perhaps did not sign up for the full expert witness obligation they now potentially face; recognizing that they are busy men who spend their days in the important mission of healing people; and recognizing that this reopened discovery will occur during a prime summer vacation period, the Court will entertain any motion to extend the deposition schedule based on the schedules of these physicians, as well as counsel in the case, if an extension is truly necessary.

32

premature, and is **DENIED without prejudice.**

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES without prejudice** defendants' Motion for Summary Judgment [85]; **DENIES** defendants' Motion to Strike [110].  In light of the foregoing, defendants' Motion for Oral Argument [116] is **DENIED as moot.**

Further, plaintiff shall make an assessment of the type of report he needs to file for each treating physician and shall disclose that report by **April 22, 2013.**  The deposition discovery schedule for these treating physician witnesses shall begin on **May 20, 2013 and end on July 8, 2013.**  *Supra* at 32.


SO ORDERED, this <u>20th</u> day of MARCH, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)